UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| SUSIE LOCKHART TODD, )<br>   Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner of Social Security, )<br>   Defendant. ) | Case No: 1:13-CV-404<br>Mattice/Carter |

REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's Motion for Summary Judgment (Doc. 15) and Defendant's Motion for Summary Judgment (Doc. 16).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

Plaintiff was 49 years of age on the date of the ALJ's decision (Tr. 8, 63). She has a high school education, plus 1 year of college, with additional training as a surgical technician, medical record coder, and massage therapist (Tr. 34, 63, 274). Plaintiff's past work included vacuum cleaner sales, postal worker, and laborer (Tr. 35).

## Applications for Benefits

Plaintiff protectively filed applications for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI) on September 30, 2009, alleging she became disabled on September 23, 2006 (Tr. 93, 225). She alleged disability due to back pain, panic attacks, anxiety, and depression (Tr. 268). Plaintiff later amended her alleged onset date to December 30, 2008 (Tr. 60). Plaintiff's applications were denied initially and on reconsideration (Tr. 86-89). An administrative hearing was held on February 15, 2011 (Tr. 30-55). Subsequently, the Administrative Law Judge ("ALJ") issued an unfavorable decision on February 25, 2011 (Tr. 90-106). Plaintiff filed a subsequent Title II application on March 21, 2011. The Appeals Council granted Plaintiff's request for review of the original decision of the ALJ and remanded the case to the ALJ for further proceedings to assess specifically how much weight the claimant could lift, both frequently, and occasionally; to correct the erroneous date of birth in the record; to give furhter consideration to claimant's maximum residual functional capacity, and provide appropriate retaionale with specific references to evidence of record to support the assessed limitation; to obtain supplemental evidence from a vocational expert re: transferability of skills and vocational adjustment, to identify examples of appropriated jobs in the national exonomy and to identify and resolve any conflicts between the occupational evidence provided by the VE and information in the Dictionary of Occupational Titles (DOT) and it's companion publication, the Selected Characteristics of Occupations (Tr. 108-109). Both the remanded case and the subsequent Title II application were consolidated and were both before the ALJ in the second hearing (Tr. 11).

    The ALJ held the second hearing on August 29, 2012 (Tr. 56-85), and denied Plaintiff's claim on October 5, 2012 (Tr. 8-28). The Appeals Council denied Plaintiff's request for review

on November 15, 2013 (Tr. 1-5). This case is now ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff alleged she could not perform any substantial gainful activity beginning on December 30, 2008 (the amended onset date) due to back pain, panic attacks, anxiety, and depression (Tr. 60). Plaintiff's date last insured for title II purposes is September 30, 2011 (Tr. 251).

## Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); Abbot v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. Id. If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; Skinner v. Secretary of Health & Human Servs., 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in

the national economy which he/she can perform considering his/her age, education and work experience. Richardson v. Secretary, Health and Human Servs., 735 F.2d 962, 964 (6th Cir. 1984); Noe v. Weinberger, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); Landsaw v. Secretary, Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994) (citing Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir. 1986)); Crisp v. Secretary, Health and Human Servs., 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2011.

2. The claimant has not engaged in substantial gainful activity since December 30, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Degenerative disc disease of the cervical and lumbar spine; osteoarthritis of the left knee; chronic obstructive pulmonary disease/bronchitis; a depressive disorder; and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments

4

in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) which does not require lifting more than 15 pounds occasionally and 10 pounds frequently; sitting standing, and walking are possible for 6 to 8 hours, each, with allowance for normal work breaks; the claimant must avoid excessive exposure to dust, smoke, fumes, and other pulmonary irritants; she can do no work involving heights, moving machinery or similar hazards; she is limited to unskilled job tasks (SVP1-2) involving only occasional contact with the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 19, 1963 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CDFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966.

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 30, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 14-22).

## Issue Presented

1) Whether the Commissioner's RFC finding was supported by substantial evidence.

Relevant Facts

Plaintiff's medical treatment is set forth in detail in the ALJ's Administrative Decision (Tr. 17-21) and in Plaintiff's Brief (Doc 15-1, p 3-5). I will not repeat it here but will refer to relevant portions of it in the analysis section.

Analysis

In support of her position, Plaintiff makes several arguments. First, she asserts the Commissioner failed to follow agency rules and regulations by failing to comply with the remand order of the Appeals Council and also failed to determine if she was capable of light exertional work. She argues there was a failure to identify and resolve conflicts between the occupational evidence of the VE and the DOT and finally contends the ALJ erred in his credibility assessment. For reasons that follow, I do not agree.

The Reduced Range of Light Work:

In the first decision on Plaintiff's claims, the ALJ found Plaintiff had the RFC for light work (with other restrictions) which did not require lifting more than 15 pounds (Tr. 96). The Appeals Council vacated the decision and remanded the case to the ALJ to clarify how much weight Plaintiff could lift on an occasional and frequent basis (Tr. 108). After a new hearing, the ALJ determined Plaintiff could perform a restricted range of light work, which did not require more than occasional lifting and carrying of 15 pounds, or frequent lifting and carrying of 10 pounds (Tr. 16).

Plaintiff argues the ALJ did not follow the order of the Appeals Council because his second RFC determination is essentially the same as the first RFC determination (Doc. 15-1, Plaintiff's Brief, p. 6-7). I disagree because the second ALJ decision specifically addresses the

amount of weight Plaintiff can lift and carry on a *frequent* basis, while the first decision did not (Compare Tr. 16 and 96). Plaintiff argues that the ALJ's RFC determination is further flawed because it is inconsistent with the regulatory definition of light work (Doc. 15-1, Plaintiff's Brief, p.7). Specifically, she argues that the ALJ erred in finding that she could perform light work because she is not capable of lifting 20 pounds. The Commissioner submits that there is no conflict between the regulatory definition of light work and the specific RFC determination the ALJ made in this case.

> Light work is defined in 20 C.F.R. 404.1567(b) and 416.967(b):
>
> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

The regulation provides a person must be able to do *substantially all of these activities.* In this case the ALJ found Plaintiff capable of sitting, standing, and walking for 6 to 8 hours each, and could lift and carry 15 pounds occasionally and 10 pounds frequently (Tr. 16). This RFC is consistent with the definition in the regulations.

To the extent that Plaintiff's RFC may be interpreted as falling somewhere between the definition of light and sedentary work, the ALJ properly obtained VE testimony to determine the extent to which additional limitations erode the occupational base (Tr. 22). Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of

7

work as defined in sections 404.1567 and 416.967 of the regulations, the adjudicator will consider the extent of any erosion of the occupational base and access its significance. Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource. See Social Security Ruling (SSR) 83-12, 1983 WL 31253, at * 2. This is what the ALJ did in this case.

Plaintiff also argues the ALJ's determination that she can frequently lift up to 10 pounds is not supported by substantial evidence (Doc. 15-1, Plaintiff's Brief at p. 8). She contends the ALJ's only reference to her ability to lift was to Dr. Michael Johnson's report, where he opined that Plaintiff's limitations included bending, crouching, vibratory activities, and lifting /carrying greater than 15 pounds (Tr. 461), but which did not assess her ability to lift and carry on a frequent basis. However, as the Commissioner notes, state agency physician Robert Haas did provide an opinion that Plaintiff was able to lift and carry 10 pounds frequently (Tr. 477). While Plaintiff argues the ALJ did not reference Dr. Haas's opinion for her lifting and carrying abilities, his opinion is in the record and provides substantial evidence for this determination. State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. See 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); SSR 96-6p, 1996 WL 374180.

The Resolution of Conflicts between the Occupational Evidence of the VE and the DOT:

The Commissioner argues the ALJ's Decision Complies with SSR 00-4p. After assessing Plaintiff's RFC, the ALJ found at step four of the sequential evaluation process that Plaintiff could not perform her past relevant work (Tr. 21). See 20 C.F.R. §§

8

404.1520(a)(4)(iv),416.920(a)(4)(iv). The ALJ, therefore, had to determine at the fifth and final step if Plaintiff could perform other work. See 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). The ALJ utilized the framework of the Medical-Vocational Guidelines and the testimony of the VE to determine that a significant number of jobs existed in the national economy that Plaintiff could perform (Tr. 21-22). The ALJ specifically asked the VE to consider a hypothetical that included the ability to lift and carry 15 pounds occasionally and 10 pounds frequently (Tr. 73). In response to the hypothetical question that included the ALJ's assessment of Plaintiff's RFC, including the 15 pound limitation, the VE identified examples of jobs Plaintiff could perform given her limitations, such as inspector, sorter, and storage facility rental clerk, (Tr. 22, 74-76).

Plaintiff argues the ALJ could not rely on the VE's testimony to establish jobs she could perform because her testimony conflicted with the Dictionary of Occupational Titles (DOT) (Doc. 15-1, Plaintiff's Brief at p. 8-10). Social Security Ruling 00-4p imposes an "affirmative responsibility" on the ALJ to ask about any possible conflict between the VE's testimony and the DOT. See SSR 00-4p, 2000 WL 1898704, at * 2. In accordance with SSR 00-4p, the ALJ specifically asked the VE to let the parties know if her testimony conflicted with the DOT and she replied in the affirmative (Tr. 78[1]). At that point, SSR 00-4p requires the adjudicator to resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information. See id.

---

[1] The Commissioner argues the fact that the ALJ stated in his decision that there was no conflict is of no consequence because the numbers of jobs the VE ultimately testified about was significant. I agree with that argument. The ALJ had the VE address the conflict.

9

SSR 00-4p "emphasizes that before relying on VE . . . evidence to support a disability determination or decision, . . . adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the Dictionary of Occupational Titles . . . ." SSR 00-4p, 2000 WL 1898704, *1 (2000). The ruling further states:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an *apparent* unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE . . . evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE. . . testimony rather than on the DOT information.

*Id.* at *2 (emphasis added). The ruling further provides that:

> When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

*Id.* at *4.

10

Here, the ALJ asked the VE to explain the variation between the exertional requirements of the jobs as defined in the DOT and her testimony (Tr. 21).  The VE addressed the conflict and explained that the inspector job would permit occasional lifting of up to 15 pounds instead of 20 pounds, and that while she had no specific information as to the percentage of reduction in numbers of jobs, "typically with inspecting you're not doing any lifting other than just the individual item" (Tr. 75).  She testified that even with a 50 percent reduction, there still remained 1,500 jobs in the region and 75,000 nationwide (Tr. 75).  She similarly testified regarding the sorter job (Tr. 75).  The VE further testified that she did not need to reduce the number of storage rental clerk jobs because "I don't think you'd usually do much lifting at all with that type of work" (Tr. 76).  The number of jobs cited by the VE and the ALJ satisfied the Commissioner's burden of showing the existence of a significant number of jobs in the national economy that Plaintiff could perform.  See 20 C.F.R. §§ 404.966, 416.966; Harmon v. Apfel, 168 F.3d 289, 292 (6th Cir. 1999); McCormick v. Sec'y of Health and Human Servs., 861 F.2d 998, 1000, 1002 (6th Cir. 1988) (finding 4,000 to 5,000 jobs in Michigan to be a significant number of jobs); Hall v. Bowen, 837 F.2d 272, 274-275 (6th Cir. 1988) (finding 1,350 to 1,800 jobs in nine county area of Dayton, Ohio to be significant); accord Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997) (200 jobs in state); Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (174 jobs locally, 1,600 jobs in state, and 80,000 nationally).  The Sixth Circuit has held that as few as 125 jobs in the region and 400,000 jobs in the national economy can be a significant number of jobs.  Stewart v. Sullivan, No. 89-6242, 1990 WL 75248, at *4 (6th Cir. June 6, 1990).  I conclude that the ALJ reasonably resolved the conflict by determining the explanation given by the VE was reasonable and provided an adequate basis for his reliance on the testimony of the VE.

11

The ALJ's Credibility Determination:

Plaintiff finally argues the ALJ's credibility determination is deficient because the ALJ did not provide adequate reasons for finding her testimony not credible. Plaintiff characterized the reasons given as "meaningless boilerplate." (Doc. 15-1, Plaintiff's Brief, pp. 10-11). As the Commissioner notes, when a claimant alleges disability based on her subjective complaints, she must present objective medical evidence of an underlying medical condition. See 20 C.F.R. §§ 404.1529(a),(b); 416.929(a), (b); Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir.1997). If the claimant establishes she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on the claimant's ability to work. See 20 C.F.R. §§ 404.1529(c),(d); 416.929(c),(d); Walters, 127 F.3d at 531. "The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this Court will generally defer to the Commissioner's assessment when it is supported by an adequate basis." Walters, 127 F.3d at 531.

Here, a fair review of the ALJ's decision supports the conclusion that he fully considered Plaintiff's allegations in relation to the other evidence, and articulated sufficient reasons for finding her allegations not fully credible (Tr. 16-20). After summarizing Plaintiff's subjective complaints of physical and mental symptoms, the ALJ found that her medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC described above (Tr. 16, 20). It is true that this language is often found in opinions and could be referred to as boiler plate. The ALJ

12

specifically found the extent of Plaintiff's symptoms were not supported by the objective medical evidence or the daily activities reported in Plaintiff's records (Tr. 20). The ALJ enumerated the specific objective findings from the record, including moderate lumbar degenerative disc disease and osteoarthritis of the knee, mild cervical degenerative disc disease and scoliosis, negative straight leg raising tests, good strength, good range of motion, and normal sensation (Tr. 20, 418, 425, 433, 500, 510-511). Plaintiff challenges the ALJ's notation that her straight leg raising tests were negative by pointing to one positive finding made by Dr. Johnson. (Doc. 15-1, Plaintiff's Brief, p. 11). Plaintiff is correct that Dr. Johnson did find positive straight leg raising when Plaintiff was supine, but he also noted negative straight leg raising when she was sitting (Tr. 461). Further, Plaintiff exhibited negative straight leg raising on other occasions (Tr. 500, 511).

Plaintiff challenges the ALJ's reliance on Plaintiff's activities, arguing that her ability to drive to the store is not indicative of the ability to do light work. However, the record includes other instances of her activities, which include cooking, light housecleaning, laundry, cleaning floors, driving and shopping (Tr. 455). She reported attending church twice weekly, visiting her children and grandchildren, taking online courses, and volunteering at the local jail to provide ministry work to female inmates (Tr. 455-56, 921, 929, 931, 933). Although not dispositive, a claimant's activities may show that the claimant's symptoms are not as limiting as she alleged. See 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); Walters, 127 F.3d at 532. "[A]n ALJ's findings based on the credibility of the [claimant] are to be accorded great weight and deference." Id. at 531. Considering the foregoing range of activities, I conclude substantial evidence supports the ALJ's assessment of Plaintiff's credibility.

13

The standard of judicial review to be applied by this Court is whether the findings of the Commissioner are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); Landsaw v. Secretary of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side of the issue, if there is evidence to support the Commissioner's findings they must be affirmed. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for the Commissioner's merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994) (citing Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir. 1986)); Crisp v. Secretary of Health & Human Servs., 790 F.2d 450 n. 4 (6th Cir. 1986). I conclude in this case, that even though there is evidence on the other side, there is substantial evidence to support the decision of the ALJ.

## Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND:

(1) The plaintiff's motion for summary judgment (Doc. 15) be DENIED.

(2) The defendant's motion for summary judgment (Doc. 16) be GRANTED.

(3) The case be DISMISSED. [2]

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).